# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MAURICE WILLIAMS,                )
                                 )
            Petitioner,          )
                                 )
      v.                         )          No. 4:19-CV-02272-SPM
                                 )
JENNIFER SACHSE,                 )
                                 )
            Respondent.          )

## MEMORANDUM AND ORDER

This matter is before the Court on the *pro se* petition of Missouri state prisoner Maurice

Williams ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The

parties have consented to the jurisdiction of the undersigned United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c)(1). (Doc. 7). For the following reasons, the petition will be denied.

## I.   FACTUAL BACKGROUND

The facts that formed the basis for Petitioner's convictions are set forth in the Missouri

Court of Appeals' opinion denying Petitioner's direct appeal, as follows.[1]

> At trial, [Mark] Bruner testified that he had known the owner of 4922 Penrose
> all his life. On July 31, 2014, Bruner helped Robert Turner, whose wife owned the
> property, clean the house, from which the previous tenants had recently been evicted.
> Bruner testified that the previous tenants had left beds, chairs and mattresses, but that
> there were no fixtures ripped out of the walls. Around 10:00 a.m. on August 1, 2014,
> Bruner went outside to put tags on his car. He heard the door knocker on the 4922
> door bang as the door was closed, looked across the street, and "saw a gentleman
> coming out of the house." During cross-examination, Bruner clarified that he "heard
> the door closing." [Bruner also testified that the person was carrying two bags, which
> he described as a duffle bag and a white trash bag. Resp't Ex. 1, at 337.]

---

[1] The Court has added additional information from the trial transcript in brackets, where it is
needed for clarity. Petitioner's trial began on June 8, 2015, and a verdict was reached on June 11,
2015. Resp't Ex. 1.

Bruner . . . testified that he followed the suspect at a safe distance, called 911 to report a break-in, and lost sight of Defendant when he ran on Kingshighway. Bruner further testified as to the show-up procedure [at which officers brought him to see Petitioner, in handcuffs, as a possible suspect, and Bruner identified Petitioner as the person he had followed[2]], and identified Defendant in open court as the man he had followed and as the man he had identified during the show-up. He never lost sight of Defendant for more than a few seconds.

Officer Hill also testified at trial, largely recounting his testimony from the hearing on the motion to suppress. [At trial, Officer Hill testified that he was on routine patrol, in a marked police car, when he heard a radio description of a burglary in the Penrose neighborhood involving a suspect described as a black male wearing a blue shirt and black pants, carrying two bags (one white and one dark) last seen going south on North Kingshighway. Resp't Ex. 1, at 391-93. Hill drove to that area of Kingshighway and saw a suspect in the driveway of a vacant house who matched the description and who was manipulating a white bag that was on the ground. *Id.* at 394, 398. When he got closer, he observed that the white bag was actually a bed sheet that had been folded and tied at the corners. *Id.* at 395.] He testified that Defendant dropped the white bag (or sheet) and a baseball hat then ran. Less than five minutes later, other officers had apprehended Defendant. Officer Hill drove Defendant, whom he identified as the same person he saw running away, back to 4922 Penrose, where Bruner positively identified Defendant as the person who came out of the house. Officer Hill also showed the contents of the white bag to Robert Turner. Those contents, according to Officer Hill, included copper pipe, wiring, and plumbing fixtures, as well as a screwdriver. Defendant's black backpack contained cloth gloves, a pipe wrench, and a hacksaw.

Robert Turner also testified before the jury. Turner, whose wife owns 4922 Penrose, did maintenance work there from time to time. He testified that he had done some plumbing work at the house and that he was familiar with the fixtures and valves in the house. He spent six to eight hours per day in the house during late July 2014, including on July 31. Once he was informed that 4922 Penrose had been burglarized, he went to the address, where police showed him pipes and metal items spread out on the front porch. He recognized two shut-off valves as belonging to the house. On attempting to enter the front door, he noticed the locks were jammed: "[i]t was jimmied or something" and he had to put his shoulder to it for entry. The door had operated normally the day before. On cross-examination, Turner admitted that he originally thought a former tenant had broken into the residence, and that he only realized there was something wrong with the front door after police had gone. Once inside the house, Turner noticed that the first floor sink was torn out, "busted out" walls and missing pipes in the basement, and water all over the floor. None of the wall damage or standing water had been there the day before. Police left the entire

_____

[2] More specifically, Bruner testified that an officer took him to see a handcuffed person in the rear of a paddy wagon, and that Bruner recognized that person as the same person he had seen leaving the house. Resp't Ex. 1, at 351-52, 376. He testified that he was very sure of the identification. *Id.* at 354.

group of pipes and valves with Turner, who welded back in some of the pipes and re-installed the valves.

The defense rested without presenting any witnesses, and after being instructed the jury found Defendant guilty of both burglary in the second degree and of stealing.[3] . On July 24, 2015, the trial court sentenced Defendant, as a prior and persistent offender, to concurrent sentences of twelve years' imprisonment on the burglary conviction and one year on the stealing conviction.

Resp't Ex. 8, at 3-6.

In his direct appeal, Petitioner asserted three points of error: (1) that the trial court erred in denying Petitioner's motion to suppress evidence related to the out-of-court identification made by Mr. Bruner, because the show-up identification procedure was impermissibly suggestive; (2) that the trial court erred in denying Petitioner's request for a continuance to secure the testimony of Evidence Technician Unit Officer Julie Sommer, because her testimony would have contradicted the testimony of Mr. Turner regarding damage to the front door and other statements; and (3) that the trial court erred in accepting the guilty verdicts on each count of first degree burglary and stealing, because there was insufficient evidence to support a finding that Petitioner entered 4922 Penrose or a finding that the items seized from him at the time of his arrest were taken from 4922 Penrose. Resp't Ex. 4, at 11-13. On August 16, 2016, the Missouri Court of Appeals denied all three points of error on the merits and affirmed the judgment of the trial court. Resp't Ex. 8.

On October 14, 2016, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Resp't Ex. 11, at 24-30.[4] Subsequently, acting through

---

[3] The count of burglary in the second degree was a violation of Mo. Rev. Stat. § 569.170, and the count of stealing property valued at under five hundred dollars was a violation of Mo. Rev. Stat. § 570.030. Resp't Ex. 2, at 41; Resp't Ex. 8, at 2.

[4] Respondent's Exhibit 11 contains multiple sets of page numbers. Because no other set of page numbers runs throughout the entire document, the Court cites to the page numbers in the electronically filed document.

counsel, Petitioner filed an amended motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. *Id.* at 35-96. In the amended motion, Petitioner asserted eight claims of ineffective assistance of counsel,[5] plus a paragraph describing in summary fashion the claims raised in the *pro se* motion.[6] *Id.* at 38-91. On July 5, 2017, following an evidentiary hearing, the motion court entered an order denying the first eight claims on the merits. *Id.* at 108-41. With regard to the paragraph summarizing Plaintiff's various *pro se* claims, the motion court denied the claims because Petitioner did not comply with Missouri Supreme Court Rule 29.15(g)[7] in raising

---

[5] Petitioner asserted seven claims of ineffective assistance of trial counsel in the amended motion, based on trial counsel's (1) inducing Petitioner to waive his right to testify at trial by failing to advise him that the trial court had ruled to exclude his exculpatory statements; (2) failing to timely file a motion for continuance of trial based on the absence of Evidence Technician Unit Officer Julie Sommer; (3) moving for multiple continuances without regard for Petitioner's request for a speedy trial under the United States and Missouri constitutions; (4) consenting to the first, second, and fourth paragraphs of the state's motion in limine, and thereby excluding defense-favorable evidence and argument from trial; (5) failing to request submission of an instruction on the lesser-included offense of trespass in the first degree; (6) offering a jury instruction on eyewitness identification testimony, instruction eight, that was not specifically provided for in the Missouri Approved Instructions and that was based on a provisional instruction set to become effective after Petitioner's trial; and (7) failing to move to strike jurors Williams, Hutti, and Goodwin because they were either ineligible or unqualified for jury service. Resp't Ex. 11 at 37-84. Petitioner also asserted one claim of ineffective assistance of appellate counsel, based on trial counsel's failure to assert on appeal the trial court's error in submitting instruction eight to the jury. *Id.* at 84-91.

[6] In this paragraph, Petitioner summarized the following claims raised in the *pro se* motion and requested ruling on them: violation of right to speedy trial, failing to dismiss the case due to faulty indictment and grand jury irregularities, submitting improper jury instructions #5 and #8, granting the state's motion in limine, failing to grant a defense continuance to obtain Officer Sommer's trial testimony, failing to grant Petitioner's motion for judgment of acquittal,  failing to follow the sentencing assessment report recommendations, refusing to sentence Petitioner to a treatment program, sentencing Petitioner to a 12-year sentence, ineffective assistance of appellate counsel for failure to consult with him before filing a brief, failing to raise all claims of trial court error on appeal, submitting an incomplete and inaccurate transcript, raising points on appeal that the appellate court found had no merit, failing to file a reply brief, and failing to request oral argument. *Id.* at 91-92.

[7] Rule 29.15(g) states, in relevant part, "The amended motion shall not incorporate by reference or attachment material contained in any previously filed motion nor attach or incorporate the pro se motion. All claims shall be included within the same body and text of the amended motion."

them. *Id.* at 139-40. The court also found that most of the claims in the list pertained to trial court errors not cognizable in a Rule 29.15 motion. *Id.* at 140.

On appeal from the denial of his motion for post-conviction relief, Petitioner raised three claims: (1) ineffective assistance of trial counsel in offering instruction eight, an instruction on eyewitness testimony based on a provisional version of MAI-CR 302.01 that failed to list all of the required factors and had other defects; (2) ineffective assistance of trial counsel in failing to request submission of a jury instruction on the lesser-included offense of trespass in the first degree; and (3) ineffective assistance of trial counsel in failing to move to strike juror Goodwin. Resp't Ex. 12, at 15-20. On December 18, 2018, the Missouri Court of Appeals found all three claims to be without merit and affirmed the judgment of the motion court. Resp't Ex. 16.

In the instant petition, Petitioner raises 39 separate grounds for habeas relief, several of which include multiple embedded claims.

## II. LEGAL STANDARDS

A prisoner in custody under the judgment and sentence of a state court may seek habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a), "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). It is well established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). *See also Nance v. Norris*, 392 F.3d 284, 289 (8th Cir. 2004) (noting that "errors of state law are not cognizable in federal habeas courts"). In a habeas proceeding, the Court reviews claims of error "only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Brende v. Young*, 907 F.3d 1080, 1084 (8th Cir. 2018) (quoting *Rousan v. Roper*, 436 F.3d 951,

958 (8th Cir. 2006)). Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).

### III.   DISCUSSION

The Court will address Petitioner's claims in two groups: (A) claims Petitioner raised in state court; and (B) claims Petitioner did not raise in state court.

### A.  Claims Raised in State Court (Grounds 17a, 19, 20, and 21)

Four of Petitioner's claims for relief (Grounds 17a, 19, 20, and 21) were properly raised in state court and were adjudicated on the merits by the state court. "In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2015) (internal citations and quotation marks omitted).

Under subsection (1), a state court decision is "contrary to" clearly established Federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state court 'unreasonably applies' Supreme Court precedent if it 'identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (quoting *Williams*, 529 U.S. at 413).

Under subsection (2), "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings' only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.* at 508 (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004)). The petitioner must make this showing by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Applying these standards, the Court will address each claim in turn.

### Ground 17a: Trial Court Error – Denial of Request for Continuance[8]

In Ground 17a, Petitioner argues that the trial court erred by denying his request for a continuance so that Officer Jennifer Sommer could testify on his behalf. Petitioner alleges that Officer Sommer's testimony would have undermined the testimony of state's witness Robert Turner. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied it. Resp't Ex. 8.

The facts relevant to this claim are as follows. At trial, Robert Turner testified that when he went into the house at 4922 Penrose after the burglary, there was something wrong with the

---

[8] Petitioner appears to be asserting two separate claims in Ground 17: one of trial court error related to this continuance (which the Court terms 17a), and one of ineffective assistance of trial counsel based on counsel's failure to properly request the continuance (which the Court terms 17b). Claim 17b was not raised in state court and will be addressed in the section below.

front door. Resp't Ex. 1, at 478. He tried to open it up with a key but then had to put his shoulder to it, because it  "seemed like it was stuck" and the locks had been "jimmied or something." *Id.* On cross examination, however, he admitted that at his deposition, he had testified that at first he did not notice any damage to the front door, that he had said there was no visible damage when he first got there, and that only after the police left did he realize there might be something wrong. *Id.* at 498. He also admitted that he never told the police there was an issue with the front door; that it always kind of stuck when he opened it; and that while he was at the house, the police never told him they had any problem going in the front door. *Id.* He also admitted that he had told the police he thought it was possible that a key had been used by the suspect and that former tenants were involved. *Id.* at 499.

After the close of the state's evidence, defense counsel told the trial court about an Evidence Technician Unit officer named Jennifer Sommer, whom she had subpoenaed for trial. *Id.* at 521. Defense counsel stated that at the end of the prior week, she had gotten the subpoena back with a note that Officer Sommer was on vacation. *Id.* Defense counsel told the trial court that Officer Sommer had written a report in which she looked at the front door of the house at 4922 Penrose and noticed that it was undamaged, and that Robert Turner told her repeatedly that he believed a former tenant had used a key to get in. *Id.* at 522. Defense counsel told the trial court that if Officer Sommer had been available, defense counsel would have asked her questions to support what Turner had admitted. *Id.* The trial court stated, "Officer Sommer, were she here to testify, would repeat the information that Mr. Turner had already given. So I don't think that her evidence would be necessary to Mr. Williams in order for him to make the arguments that he would want you to make in closing this case." *Id.* at 523. The trial court then allowed time for defense counsel to have an off-the-record discussion with Petitioner, after which defense counsel stated

8

that Petitioner had asked her to move for a continuance to allow Office Sommer to testify. *Id.* at 523-24. The prosecution opposed the motion, and the trial court denied it. *Id.* at 524-26. The trial court stated, "Again, Mr. Turner has testified about the things he told police, and he specifically said that he talked to the police about the front door and that his belief was that a tenant who still had a key to the house may well have been the person who got into the house and burglarized the house." *Id.* at 526-27.

In evaluating Petitioner's claim, the Missouri Court of Appeals noted that under Missouri law, the decision of whether to grant a motion for continuance is within the sound discretion of the trial court and will be reversed only upon a very strong showing that the court abused its discretion and that prejudice resulted. The court found this standard not met. It noted that the motion was made after the close of the State's evidence, beyond the "last minute" timeline frowned upon in other Missouri cases. It also found the materiality of Officer Sommer's testimony was "questionable at best," given that although Sommer would have testified that the front door at Penrose was undamaged and that Turner had initially believed that a former tenant had used a key to get in, Turner himself had testified to that effect and ceded that his original statements were contradictory to his eventual conclusion that the door had been damaged in a break-in. Resp't Ex. 8, at 10.

As the Supreme Court has recognized, "Trial judges necessarily require a great deal of latitude in scheduling trials," especially in light of the problems associated with "assembling the witnesses, lawyers, and jurors at the same place at the same time." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Thus, "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589

(1964) (citing *Avery v. Alabama,* 308 U.S. 444, 446 (1940)). "'Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay,' may give rise to a violation of due process." *Loggins v. Frey*, 786 F.2d 364, 366 (8th Cir. 1986) (quoting *Morris*, 461 U.S. at 11-12; internal citation and quotation marks omitted). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589.

The Court first finds that although the Missouri Court of Appeals did not specifically mention the federal law discussed above, its determination constituted an adjudication on the merits of the claim that is entitled to deference under the AEDPA. It is not necessary for a state court to explicitly discuss federal law in order for its decision to constitute an adjudication on the merits of a federal claim. *See Lotter v. Houston*, 771 F. Supp. 2d 1074, 1102 (D. Neb. 2011) (rejecting the petitioner's argument that AEDPA deference did not apply because the Nebraska Supreme Court had ruled that the denial of the motion for continuance did not amount to an abuse of discretion; noting that "a ruling can be on the merits of a federal claim for AEDPA purposes without a reference to federal law or Supreme Court precedent" and finding that in the case before it, it was "apparent that the 'abuse of discretion' ruling was shorthand for 'there was no violation of defendant's rights, constitutional or otherwise'"). *See also Storey v. Roper*, 603 F.3d 507, 515 (8th Cir. 2010) (finding that a state court ruling regarding late disclosure of witnesses was subject to AEDPA deference even though the "Missouri court did not mention federal law or Supreme Court precedent"); *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) (noting that "the pertinent question is not whether the [state court] explicitly discussed the [constitutional provision at issue] but whether its decision contradicted applicable Supreme Court precedent in its reasoning or

result" and holding that the state court had effectively adjudicated Confrontation Clause claim on the merits through its analysis of a state rule of evidence).

Here, although it did not cite the federal cases described above or use the specific words used in those cases, the Missouri Court of Appeals' analysis clearly addressed and resolved the question of whether the trial court showed  "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" *Morris*, 461 U.S. at 11-12 (quoting *Ungar*, 376 U.S. at 589). The Missouri Court of Appeals' decision was based on its finding that the trial judge *did* have reasons for denying the continuance—the very late nature of the motion and the questionable materiality of the testimony Sommer would have offered. As in *Lotter*, the Court finds that the state court's decision was an adjudication of the claim on the merits that is entitled to deference under AEDPA. Applying AEDPA deference, it is clear that the denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The state court's decision was entirely reasonable in light of the Supreme Court law articulated above and was well supported by the record, as set forth above.

In the alternative, assuming, *arguendo*, that the Missouri Court of Appeals did not adjudicate this claim on the merits and the Court were to apply *de novo* review, the Court finds that this claim should be denied. In moving for a continuance, defense counsel told the trial court that Officer Sommer had written a report in which she wrote that she had seen an undamaged front door and that Robert Turner told her that he believed a former tenant had used a key to get in. But Mr. Turner had already testified to the same facts—he admitted he had previously stated that he did not notice any visible damage when he first got to the door and that he told the police he thought it was possible that a key had been used by the suspect and that former tenants were

11

involved. Resp't Ex. 1, at 499. Indeed, in addressing the motion on the record, defense counsel acknowledged that if Officer Sommer had testified, defense counsel would just have questions "to support what Mr. Turner admitted." *Id.* at 522. The trial judge's finding that Officer Sommer's testimony would have been repetitive and unnecessary was supported by the record. Moreover, the Court notes that the motion for continuance was not made prior to trial or early in the trial, but only at the close of the state's evidence. Under these circumstances, the trial judge's decision to deny the continuance was entirely reasonable, was not arbitrary, and was well within the latitude given to trial  judges to manage and schedule their trials. Nothing in the record suggests that the trial court's denial of the continuance involved "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" *Morris*, 461 U.S. at 11-12 (quoting *Ungar*, 376 U.S. at 589).

For all of the above reasons, Ground 17a will be denied.

### Ground 19: Ineffective Assistance of Trial Counsel – Failure to Request Lesser-Included Offense Instruction

In Ground 19, Petitioner alleges that his trial counsel was ineffective when she failed to request that the Court give the jury an instruction on the lesser-included offense of trespass. Petitioner also alleges in Ground 19 that his trial counsel lied in her testimony during post-conviction relief proceedings, stating that she did not consider requesting this instruction, despite the fact that her personal file suggests she did consider it. Petitioner raised this claim in his amended motion for post-conviction relief and in his appeal from the denial of that motion, and the Missouri Court of Appeals denied the claim on the merits.

The facts relevant to this claim are as follows. In his amended motion for post-conviction relief, Petitioner argued that his trial counsel was ineffective because she failed to submit a jury instruction for the lesser-included offense of trespass in the first degree. At the evidentiary hearing

on Petitioner's ineffective assistance claims, trial counsel testified that she did not know whether she had considered the possibility of offering such an instruction. Resp't Ex. 10, at 17-18. She testified that the submission of that instruction would have been inconsistent with her theory of the case, which was that Petitioner was not the man Mr. Bruner had seen outside the house. *Id.* at 19-20. Trial counsel acknowledged that she was aware that she could have argued inconsistent defense theories. *Id.* at 20. However, she testified that in her experience, this was not a good strategy, because "[y]ou lose credibility with the jury if you have . . . alternative stories that do not agree with each other." *Id.* at 32-33. She also testified that sometimes, submitting a lesser included offense gives the jury a choice of crimes and makes them less likely to just find the defendant not guilty. *Id.* at 33.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To show ineffective assistance of counsel, a petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In evaluating this claim, the Missouri Court of Appeals articulated the proper two-prong *Strickland* standard[9] and then found that the first prong had not been satisfied, because trial counsel's decision not to submit a lesser-included offense instruction was a reasonable trial strategy. Resp't Ex. 16, at 10-11. The court stated:

> Here, the submission of an instruction on first-degree trespass, a lesser-included offense of second-degree burglary, would have been inconsistent with the defense theory employed by Movant's trial counsel. At trial, Movant's counsel consistently argued that the eyewitness misidentified Movant as the man he saw exiting an abandoned building carrying two items; as previously discussed, Movant's counsel submitted an instruction based upon this eyewitness identification. At the evidentiary hearing, Movant's trial counsel testified that she did not think submitting an instruction for the lesser-included trespass offense, and thus presenting inconsistent defense theories, was good trial strategy, stating "[y]ou lose credibility with the jury." Indeed, to trial counsel's point, if an instruction on first-degree trespass would have been submitted, two different and contrary defense theories would have been offered: (a) Movant was misidentified by the eyewitness, and did not commit a crime, and (b) if Movant did commit a crime, he only committed first-degree trespass and not second-degree burglary. Instead, Movant's trial counsel argued that Movant had not committed the charged offenses. Choosing to pursue an "all or nothing" defense has consistently been held to be reasonable trial strategy, as it is objectively reasonable to argue that a defendant is innocent of all criminal wrong-doing. *Jones v. State*, 514 S.W.3d 72, 81-82 (Mo. App. E.D. 2017). "The decision not to request a lesser included offense instruction may be a tactical decision usually based on the belief—often a reasonable one—that the jury may convict of the lesser offense, if submitted, rather than render a not guilty verdict on the higher offense if the lesser is not submitted." *Id.* at 81.
> In this instance, where Movant was identified as the perpetrator by only one eyewitness, employing a defense theory based on misidentification by that one witness was reasonable trial strategy. Thus, Movant's trial counsel was not ineffective for failing to submit an instruction on the lesser-included offense of first-degree trespass that would have contradicted that chosen defense theory and would have offered the jury a middle ground to convict Movant rather than potentially acquit him of the charged offense. *See Hendrix*, 369 S.W.3d at 100; *Jones*, 514 S.W.3d at 82 ("Counsel will not be deemed ineffective for seeking to

---

[9] The Missouri Court of Appeals did not cite *Strickland* itself, but it described the same prongs and cited a Missouri case that discussed *Strickland* in detail. Resp't Ex. 16, at 7-8 (citing *McGuire v. State*, 523 S.W.3d 556, 563 (Mo. Ct. App. 2017)).

employ the best defense for [their] client by not offering the jury a middle ground for conviction.").

*Id.* at 11-12. The court found it unnecessary to address the second *Strickland* prong. *Id.* at 12.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 201 (2011)). It is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

After review of the record, the Court finds that the Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the facts. Given *Strickland*'s "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," 466 U.S. at 689, combined with the facts set forth above showing that Petitioner's counsel believed it was the better trial strategy based on her experience to focus on the primary theory of mistaken identity, rather than offering the jury the two inconsistent stories, the Missouri Court of Appeals' resolution of this claim was entirely reasonable.

Petitioner's allegation that his trial counsel lied at the evidentiary hearing by saying that she never considered a lesser-included offense instruction, when in fact she did consider it, does not change this Court's analysis. First, this allegation is refuted by the record. At the hearing, when asked whether she considered requesting an a lesser-included offense instruction of trespass, Petitioner's trial counsel responded, "I don't know." Resp't Ex. 10 at 18. Second, even if Petitioner's trial counsel had considered the instruction, it would not undermine the state court's

denial of this claim, which was based on a finding that trial counsel's decision not to submit this instruction was a reasonable trial strategy.

For all of the above reasons, Petitioner is not entitled to relief on Ground 19.

### Ground 20: Insufficient Evidence to Support Conviction

In Ground 20, Petitioner argues that the trial court erred in not granting his request for acquittal based on insufficient evidence. More specifically, in raising this claim in the state court, Petitioner argued that there was insufficient evidence to support a finding that he entered 4922 Penrose and there was insufficient evidence that the items seized from him at the time of his arrest were items taken from 4922 Penrose. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied it on the merits.

In reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). *Accord Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Cavazos v. Smith*, 565 U.S. 1, 7 (2011). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. State law defines the specific elements of the crime at issue. *Fenske v. Thalacker*, 60 F.3d 478, 480 (8th Cir. 1995). The federal habeas court's scope of review is very limited. The Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state" and "must defer to that resolution." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted). Furthermore, "a state-court decision rejecting a sufficiency

challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker*, 567 U.S. at 43 (quotation marks omitted).

The Missouri Court of Appeals' denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Although the Missouri Court of Appeals did not refer to the applicable federal law discussed above, the standard it applied was substantively the same:

> When reviewing the sufficiency of the evidence to support a conviction, we do not weigh the evidence. *State v. Jeffrey*, 400 S.W.3d 303, 313 (Mo. Banc 2013). Instead, we accept as true all evidence tending to prove guilt, together with all reasonable inferences that support the verdict. *Id.* We ignore all contrary evidence and inferences, and ultimately must assess whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.

Resp't Ex. 8, at 11. The court went on to articulate the relevant elements of the crimes of burglary and stealing and to analyze whether the evidence presented at trial satisfied those elements:

> Because the dispositive facts are related, we address the burglary and stealing convictions together. As to the burglary conviction, Defendant argues there was insufficient evidence to show he entered 4922 Penrose, and therefore that he did not "knowingly enter[] unlawfully" the building for the purpose of committing a crime therein. Section 569.170.1; *Tramble v. State*, 414 S.W.3d 571, 574 n. 2 (Mo. App. E.D. 2013). . . .  As to the stealing conviction, Defendant avers there was insufficient evidence to show he was in possession of "any items" that came from inside 4922 Penrose.
>
> The record contains ample evidence for the jury to have concluded that Defendant entered 4922 Penrose and did, in fact, take items from that house. Mark Bruner testified that he heard the door knocker at 4922 Penrose as Defendant exited the house: that he "heard the door closing" then saw Defendant standing outside the front door. According to Turner's testimony, the front door appeared to have been "jimmied or something." Bruner followed Defendant, who ran away from him. Defendant likewise fled from Officer Hill after dropping a white bag on the ground. That bag contained two shut-off valves from inside the house, plus copper pipe; the black bag found on Defendant's person contained a hacksaw and pipe wrench that could be used to remove pipes. And Turner testified that pipes fit the holes where pipes were missing from the basement in 4922 Penrose.
>
> The audible closing of a door, the contemporaneous presence of Defendant on the doorstep, and testimony that the door had been "jimmied" are circumstantial

evidence that Defendant exited the house, which necessarily implies he had entered it. Given that evidence, Defendant's flight from the scene can also be considered as indicia of guilt. *See State v. Harrison*, 698 S.W.2d 564, 566 (Mo. App. E.D. 1985) (presence at the scene and flight will support conviction when coupled with other circumstantial evidence showing active participation in the offense). Most significantly, Defendant had a hacksaw and pipe wrench, which the jury could infer he used to remove the copper pipe and shut-off valves from 4922 Penrose. While Defendant offers alternative explanations as to why those materials were found in his bags, the jury was free to disbelieve his evidence and arguments. *State v. Vernon*, 337 S.W.3d 88, 93 (Mo. App. W.D. 2011).

*Id.* at 11-12.

The Missouri Court of Appeals' analysis was consistent with *Jackson* and the other federal cases discussed above, and its conclusion is well supported by the record. The trial transcript supports the state court's finding that there was evidence that Bruner heard the door close at 4922 Penrose and immediately looked up and saw Petitioner outside the door, Resp't Ex. 1, at 334, 367; that the front door lock at 4922 Penrose had been "jimmied or something," *id.* at 478; that Petitioner ran away from Officer Hill and possibly ran away from Mr. Bruner,[10] *id.* at 344, 371-72, 394, 396; that Petitioner dropped a bag containing shut-off valves that were identified as having come from 4922 Penrose, *id.* at 394-95, 406-07; and that Petitioner was carrying a hacksaw, gloves, and screwdrivers, *id.* at 421. Although Petitioner offers alternative explanations for this evidence, this Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state" and "must defer to that resolution." *Whitehead*, 340 F.3d at 536. The state court reasonably determined that the evidence was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that Petitioner "knowingly enter[ed] unlawfully" the house at 4922 Penrose and took items from there.

---

[10] Mr. Bruner testified that while he was following Petitioner, he saw Petitioner walking, but that he believed Petitioner was running away at one point, based on how quickly he would have had to be moving in order to get out of Mr. Bruner's sight. Resp't Ex. 1, at 371-72.

Because the Missouri Court of Appeals' denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts, Petitioner is not entitled to relief on Ground 20.

### Ground 21: Trial Court Error – Denial of Motion to Suppress Identification

In Ground 21, Petitioner argues that the trial court erred in denying his motion to suppress the out-of-court identification made by Mr. Bruner. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied it on the merits.

The Supreme Court has held that there is "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). However, even if there is "[a]n identification infected by improper police influence," it "is not automatically excluded." *Id.* "[I]f the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and a jury will ultimately determine its worth." *Id.* A "totality of the circumstances" approach is used to assess the reliability of an identification, and the factors to be considered include "'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *Id.* at 239 & n .5 (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)).

Although the Missouri Court of Appeals did not cite the federal law describe above, the standard it applied was substantively the same. It stated, "We use a two-pronged test to evaluate a trial court's decision to admit identification testimony. First we ask whether the pre-trial

identification procedure was impermissibly suggestive. Only if answering that question affirmatively do we proceed to the second prong, where we assess the reliability of the identification." Resp't Ex. 8, at 6 (internal citations omitted). In describing the factors to use in assessing reliability, the Missouri Court of Appeals listed the same five factors listed by the Supreme Court in *Manson* and *Perry*. *Id.* at 8.

Applying the first step of inquiry described in *Perry*, the Missouri Court of Appeals found that the identification was not improperly suggestive. It stated:

> Here, Mark Bruner had an adequate, independent basis for identifying Defendant: he had a close encounter with Defendant then followed him closely for 15 to 20 minutes. In his first look at Defendant, Bruner got a "good look" of Defendant (including Defendant's face) from only 20 feet away. Bruner then followed Defendant, keeping in visual range except for two brief moments during that time. Within an hour of finally losing sight of Defendant, Officer Hill took Bruner to a paddy wagon, where Defendant sat waiting. Bruner immediately identified Defendant as the suspect he had seen leave 4922 Penrose. Bruner testified that Hill, though he asked whether Bruner could identify Defendant if he saw him again, did not in any way suggest Defendant was "good for the crime," only that police had a subject who matched Bruner's description. Bruner's identification of Defendant was driven not by a comment from Hill, but by his strong recollection of Defendant's appearance. Accordingly, the identification procedure was not unduly suggestive.

*Id.* at 7-8. Applying the second step of the inquiry described in *Perry*, the Missouri Court of Appeals found that even assuming that this identification involved suggestive circumstances, it was nonetheless independently reliable in light of the reliability factors identified above. *Id.* at 8. The court stated:

> Here, Bruner saw Defendant's face from approximately 20 feet away as he was departing the crime scene, followed him for at least a quarter hour, accurately described that Defendant was carrying two bags (one white, another black), described the clothes he was wearing, and identified Defendant immediately once he was taken to him. Bruner told Officer Hill (and, during the motion to suppress hearing, told the trial court) that he was "certain" of the identification.

*Id.*

The Missouri Court of Appeals' analysis of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court's review of the record shows support for the Missouri Court of Appeals' analysis of both prongs. There was testimony at the hearing on the motion to suppress to show that Bruner got a "very good look" at Petitioner's face, on a bright, sunny day, from about 15 to 25 feet away, Resp't Ex. 1, at 56, that Bruner spoke with Petitioner briefly and then followed him for fifteen to twenty minutes, while watching his build and clothes, *id*. at 57-60; that Bruner's description of Petitioner's clothing and the items he was carrying (two bags, one white) was generally consistent with Petitioner's clothing and the items he was carrying when he was apprehended, *id.* at 37-39, 57, 70; that when officers took Bruner to see Petitioner, they did not say anything to him to suggest that the person in custody was the person who had done the crime, *id.* at 63; that the identification was made within an hour of Bruner initially seeing the suspect, *id.* at 70-71; and that Bruner was certain of the identification, *id.* at 65. These facts provide substantial support both for the finding that the identification procedure was not impermissibly suggestive and for the finding that even if the procedure was impermissibly suggestive, the identification was sufficiently reliable in light of the relevant factors that it was admissible.

The Court also notes that the Eighth Circuit has found similar identifications not impermissibly suggestive. *See United States v. Martinez*, 462 F.3d 903, 910-11 (8th Cir. 2006) (show-up identification not unduly suggestive where the suspect was handcuffed, police officers were present, and the suspect had been driven to the scene in a police car); *United States v. Pickar*, 616 F.3d 821, 827–28 (8th Cir. 2010) (identification was not unduly suggestive even though the suspect was shown to witnesses while standing handcuffed next to a uniformed police officer with

a flashlight being shined in his face; stating, "'absent special elements of unfairness, prompt on-the-scene confrontations do not entail due process violations'") (quoting *United States v. King*, 148 F.3d 968, 970 (8th Cir.1998)). Moreover, the  Eighth Circuit has found an identification to be reliable under circumstances similar to those here. *See, e.g., Briscoe v. Cty. of St. Louis, Mo.*, 690 F.3d 1004, 1012 (8th Cir. 2012) (identification reliable where the victim "had ample opportunity to view her attacker during the prolonged and well-lit encounter," "focused on his face in order to identify him later," gave a "pre-identification description of her attacker's face [that] was fairly consistent with [the lineup] photo," "expressed complete confidence in her identification," and "made the identification within hours of the attack").

Because the Missouri Court of Appeals' denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts, Petitioner is not entitled to relief on Ground 21.

### B.  Claims Not Raised in State Court

"A state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one complete round of the State's established appellate review process." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (internal quotation marks omitted). "A claim is procedurally defaulted if a habeas petitioner failed to raise it in state proceedings." *Wooten v. Norris*, 578 F.3d 767, 777 (8th Cir. 2009). *See also Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006). ("Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted.").

In Missouri, a criminal litigant must generally pursue constitutional claims "at the earliest time consistent with good pleading and orderly procedure." *Kirk v. State*, 520 S.W.3d 443, 457 (Mo. 2017) (internal quotation marks omitted). Claims of trial court error must be raised on direct

22

appeal if possible. *See Middleton v. State*, 103 S.W.3d 726, 740 (Mo. 2003)*; Eye v. State*, 551 S.W.3d 671, 677 (Mo. Ct. App. 2018); *Phillips v. State*, 214 S.W.3d 361, 364-65 (Mo. Ct. App. 2007). Claims of ineffective assistance of counsel, on the other hand, must be raised in a motion for post-conviction relief brought pursuant to Missouri Supreme Court Rule 29.15. *See Luebbers*, 446 F.3d at 896; Mo. S. Ct. Rule 29.15. Additionally, an ineffective assistance of counsel claim denied at the motion court level must also be raised on appeal in order to avoid procedural default for federal habeas purposes. *See, e.g., Osborne v. Puckett,* 411 F.3d 911, 919 (8th Cir. 2005) ("Although Osborne raised this failure-to-investigate claim in his Rule 29.15 motion to the state trial court, he did not include this specific ineffectiveness claim in his appeal to the Missouri Court of Appeals. This claim is now procedurally barred.") (footnote omitted).

A procedurally defaulted claim can be reviewed by a federal habeas court only if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Thomas v. Payne*, 960 F.3d 465, 473 (8th Cir. 2020) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Finally, to assert the fundamental miscarriage of justice exception, a petitioner must "'present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was

convicted.'" *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

Petitioner does not expressly argue that he can demonstrate cause and prejudice to excuse the default of any of his claims. However, he does assert several ineffective assistance of counsel claims that might arguably excuse the default of specific claims. The Court will address those issues on a claim-by-claim basis below. Additionally, Petitioner has asserted a claim of actual innocence (in Ground 3), which the Court construes as an attempt to invoke the fundamental miscarriage of justice exception. The Court will begin by addressing that claim.

### Ground 3 – Actual Innocence

In Ground 3 of his Petition, Petitioner alleges that he is actually innocent of the crimes of which he was convicted. To support his innocence claim, he alleges that (1) new evidence shows that the property at 4922 Penrose was burglarized a day or so before his arrest and that a witnesses lied under oath; (2) a critical defense witness, Jennifer Sommer, has exculpatory evidence that was not presented or investigated; (3) eyewitness Mark Bruner allegedly told a third person that he lied about the identification; (4) an employee of witness Robert Turner will testify that the property was damaged days prior to his arrest; (5) DNA and fingerprint evidence will show that Petitioner was never at the scene or inside of the property; and (6) a forensic review of the server at the prosecutor's office will show that the prosecution fabricated the charges against Petitioner.

In the habeas context, a claim of "actual innocence" may be asserted either as a "gateway claim," in which a petitioner asserts his actual innocence as a way to overcome procedural default of another claim, or a "freestanding claim," in which a petitioner asserts his actual innocence as an independent basis for habeas relief. *See, e.g.*, *Hayes v. Bowersox*, No. 4:12-CV-224-JMB, 2016 WL 659081, at *15 (E.D. Mo. Feb. 18, 2016) (discussing both types of claims).

A "gateway claim" of actual innocence, which has long been recognized by the Supreme Court, permits a federal habeas court to address the merits of procedurally defaulted claims where a petitioner has proven that he is actually innocent of the crime of which he was convicted. *See Schlup v. Delo*, 513 U.S. 298, 324-28 (1995); *Nash v. Russell,* 807 F.3d 892, 898-99 (8th Cir. 2015). To establish a gateway claim of actual innocence, "a petitioner must satisfy a two-part test." *Nash*, 807 F.3d at 899 (citing *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001)). First, "the 'allegations of constitutional error must be supported with new reliable evidence not available at trial.'" *Id.* (quoting *Amrine*, 238 F.3d at 1029). Second, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* The Eighth Circuit has found that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Amrine*, 238 F.3d at 1029 (quotation marks omitted); *accord Nash*, 807 F.3d at 899. Additionally, it is not enough to merely allege that the evidence of actual innocence exists; the Petitioner must present the evidence to the Court. *See Weeks v. Bowersox*, 119 F.3d 1342, 1352 (8th Cir. 1997)

Although the gateway claim of actual innocence has long been recognized, the Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggins v. Perkins,* 569 U.S 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 389, 404-05 (1993)). The Eighth Circuit has recognized that "if the Supreme Court were to grant relief on this type of claim, 'the threshold . . . would be extraordinarily high [and] would require more convincing proof than the gateway standard.'" *Nash*, 807 F.3d at 899 (quoting *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014)). "[O]n a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Dansby*, 766

25

F.3d at 816 (quoting *Schlup*, 513 U.S. at 327). "The 'extraordinarily high' threshold, if recognized, would be even higher." *Id.* (quoting *House v. Bell*, 547 U.S. 518, 555 (2006)).

Petitioner has not established either a gateway claim of actual innocence or the more demanding possible freestanding actual innocence claim. Although he alleges the existence of several pieces of new evidence, he makes no attempt to show that the evidence was not available at trial and could not have been discovered through the exercise of due diligence. Moreover, although he includes conclusory allegations of the existence of new evidence, he does not actually point the Court to any such evidence, such as affidavits from the eyewitnesses he identifies or documents to support the claims he makes. Mere allegations that evidence of innocence exists are not sufficient. *See Weeks*, 119 F.3d at 1352 (rejecting the petitioner's actual innocence claim where the petitioner had made allegations that evidence existed that would prove his actual innocence, including eyewitnesses, written records, and physical evidence, but had not actually presented the evidence; finding that "[a]llowing a creative prisoner to overcome his state procedural default with well drafted allegations of evidence would make a mockery of the Supreme Court's concern for finality, comity, and judicial economy that underlies the limited scope of the actual innocence exception.").

For all of the above reasons, Ground 3 will be denied, and it cannot excuse the procedural default of any of Petitioner's defaulted claims.

### Ground 1: Prosecutorial Misconduct

In Ground One, Petitioner alleges that the prosecutor in his case suborned perjury of witnesses (Robert Turner and Mark Bruner) by knowingly coaching or encouraging both to testify that the house on Penrose was not damaged before August 1, 2014, when in fact the damage had been done a day or so prior. Petitioner alleges that the prosecutor also withheld this information

from the defense. Petitioner further alleges that the prosecutor conspired with a former prosecutor, Brad El King, to tell Mr. Turner to lie about shutoff valves having come from the building. Petitioner alleges that this information did not become available until trial. Petitioner states that he instructed his appellate counsel to raise this on appeal, but that she failed to do so. He says he tried to file it himself and the Court refused pursuant to "Rule 380."

Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Under Missouri law, claims of prosecutorial misconduct must be raised in a direct appeal if the misconduct was apparent at trial. *See Tisius v. State*, 183 S.W.3d 207, 212 (Mo. 2006). If the misconduct was serious and was not apparent at trial, such claims may be considered in a Rule 29.15 post-conviction proceeding. Here, Petitioner did not raise this claim either in his direct appeal or in his post-conviction proceedings, despite admitting that he knew about the basis for the claim at trial and was able to ask his appellate counsel to raise it on appeal.

To the extent that Petitioner is attempting to argue that the ineffective assistance of appellate counsel should excuse the default of this claim, that argument fails. A claim of ineffective assistance of appellate counsel cannot constitute cause to excuse a procedural default where the claim of ineffective assistance of appellate counsel is itself procedurally defaulted, unless the petitioner shows cause and prejudice to excuse that procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000). Here, Petitioner did not raise this claim of ineffective assistance of counsel (or any claim of ineffective assistance of appellate counsel) in the appeal from the denial of his motion for post-conviction relief, and thus it has been procedurally defaulted. Petitioner has not shown that that default should be excused. [11]

---

[11] To the extent that Petitioner argues that his post-conviction counsel was ineffective in failing to raise this claim and that that ineffectiveness should excuse the default, the Court notes that ineffective assistance of post-conviction counsel may not be asserted as cause to excuse the

27

For all of the above reasons, Ground 1 will be denied.

### Ground 2a: Trial Court Error – Incorrect Sentence Enhancement[12]

In Ground 2a, Petitioner asserts that the trial judge sentenced him incorrectly by enhancing his sentence based on prior convictions. Petitioner states that his research recently revealed that a Missouri statute prevents convictions prior to 1995 from being counted. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default.

### Ground 2b: Trial Court Error – Instruction Regarding Eyewitness Testimony

In Ground 2b, Petitioner asserts that the trial judge incorrectly gave a jury instruction related to eyewitness testimony (MAI-CR 310.02) in conjunction with another instruction (MAI-CR 302.01) that Petitioner asserts expressly prohibits the giving of the MAI-CR 310.02 instruction. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in his state court proceedings.[13]

---

procedural default of an ineffective assistance of appellate counsel claim. *See Davila v. Davis*, 137 S. Ct.2058, 2064 (2017).

[12] Ground 2 appears to contain ten different claims under the heading, "Judicial Error by Trial Judge and Misinterpretation of the Law by Appeals Court Judges." The Court will address separately.

[13] Petitioner did raise a related claim in his postconviction proceedings: that his trial counsel was ineffective in submitting a jury instruction based on a provisional version of MAI-CR 310.02 (which instructs on eyewitness identification testimony) that was not effective until after the date of his trial. Resp't Ex. 12, at 16-17. The Missouri Court of Appeals denied the claim on the merits. Resp't Ex. 16, at 9-10, finding both that counsel was not ineffective in offering the instruction and that Petitioner had shown no prejudice from the error. *Id.*

To the extent that Petitioner is attempting to raise this claim in the instant petition, the Court finds it to be without merit, because a review of the state court decision shows that the Missouri Court of Appeals applied *Strickland* to the facts of his case in an objectively reasonable manner. The Court also notes that the Missouri Court of Appeals' resolution of the first prong of *Strickland* was based on its determination that trial counsel did not err in submitting this instruction because under Missouri law, the provisional instruction on which trial counsel based her proposed instruction *was* applicable at the time of Petitioner's trial. *Id.* at 9. This Court may not "second-

Petitioner argues in Ground 4c that his appellate counsel was ineffective for failing to raise this issue. However, as discussed above, all of Petitioner's claims of ineffective assistance of appellate counsel have been defaulted and thus cannot excuse a procedural default unless Petitioner shows cause and prejudice to excuse that procedural default. *See Edwards*, 529 U.S. at 452-53. Petitioner has not shown that the default of this ineffective assistance of appellate counsel should be excused.

Because Ground 2b been procedurally defaulted and Petitioner has not shown cause to excuse the procedural default, Ground 2b will be denied.

### Ground 2c: Post-Conviction Appeals Court Error – Failure to Address Argument Regarding Eyewitness Testimony Instruction (MAI-CR 310.02)

In Ground 2c, Petitioner argues that the appeals court erred by not addressing, in his post-conviction appeal, the claim raised now in Ground 2b, even though the same judge had agreed with the argument in a prior case. This claim appears to allege only an error in the Missouri court's interpretation of state law, which is not cognizable in habeas proceedings. Moreover, "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997).

Because Ground 3c is not cognizable in this proceeding, it will be denied.

---

guess the decision of a Missouri state court on Missouri law." *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012).

### *Ground 2d: Trial Court Error – Sentencing Error Based on Change in Missouri Law*

In Ground 2d, Petitioner argues that the maximum sentence for his burglary conviction should have been five years, not twelve years, because Missouri Senate Bill 491 changed the offense from a class C felony to a class D felony.

Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, the claim will be denied. To the extent that Petitioner argues that the ineffectiveness of trial counsel in failing to preserve this issue for appeal (*see* Ground 4e) may constitute cause to excuse the procedural default, that argument fails because a claim of ineffective assistance of trial counsel cannot constitute cause to excuse a procedural default where the claim of ineffective assistance of trial counsel is itself procedurally defaulted, unless the petitioner shows cause and prejudice to excuse that procedural default, which Petitioner has not done. *See Edwards*, 529 U.S. at 452-53.

The Court further notes that Missouri Senate Bill 491 had an effective date of January 1, 2017; as of the date of Petitioner's arrest and conviction, the prior version of the statute was in effect and stated that burglary in the second degree was a class C felony. *See* Mo. Rev. Stat. § 569.170 (effective until Jan. 1, 2017). The claim will therefore also be denied because it is without merit.

For all of the above reasons, Ground 2d will be denied.

### *Ground 2e: Trial CourtEerror – Not Allowing Jennifer Sommer to Testify*

In Ground 2e, Petitioner argues that the trial judge prejudiced his trial by not allowing witness Jennifer Sommers to testify on his behalf. This appears to be the same as the claim raised

in Grounds 17a and 17b, which are addressed elsewhere. To the extent that this presents a new claim, it was not raised in state court and thus will be denied as procedurally defaulted.

For all of the above reasons, Ground 2e will be denied.

### Ground 2f: Speedy Trial Violation

In Ground 2f, Petitioner argues that the trial judge erred by failing to dismiss his case based on violation of his right to a speedy trial. This appears to be the same as Ground 16. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 2f will be denied.

### Ground 2g: Bias of Trial Judge

In Ground 2g, Petitioner asserts that the trial judge was biased in sentencing him because he exercised his right to have a trial instead of pleading. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 2g will be denied.

### Ground 2h: Violation of Court Rules by Missouri Court of Appeals

In Ground 2h, Petitioner alleges that appellate court judges violated court rules by accepting the state's brief after deadline expired, and by so doing injected prejudice and bias against his appeal. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default.

The Court also finds that this claim alleges only an error of state law that is not cognizable in this habeas proceeding. It is well established that "federal habeas corpus relief does not lie for

errors of state law." *Estelle*, 502 U.S. at 67 (quoting *Lewis*, 497 U.S. at 780. *See also Nance*, 392 F.3d at 289 (noting that "errors of state law are not cognizable in federal habeas courts").

For all of the above reasons, Ground 2h will be denied.

### Ground 2i: Failure to Give Lesser Included Offense Instruction

In Ground 2i, Petitioner alleges that the trial court erred in not giving the jury a lesser included offense instruction. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court. To the extent that Petitioner argues that the failure might be excused by the ineffective assistance of his trial counsel in failing to submit the instruction and preserve the issue, such an argument would fail because this Court has found the corresponding ineffective assistance of trial counsel claim (Ground 19) to be without merit. *See Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004) ("In order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation. Because [the petitioner] cannot show his counsel's actions . . . fell below the level guaranteed by the constitution, he cannot show cause that will excuse his procedural default.").

For all of the above reasons, Ground 2i will be denied.

### Ground 2j: Failure to Disqualify Jurors Who Were Not Eligible

In Ground 2j, Petitioner alleges that the trial court erred in failing to disqualify jurors who were not eligible. This appears to be the same as the claim in Ground 18, where it is developed with additional detail. The Court addresses this claim in more detail below in Ground 18; Ground 2j will be denied as duplicative.

### Ground 4a: Ineffective Assistance of Trial Counsel –
### Trial Counsel Conceded Defeat Before Trial

In Ground 4a, Petitioner argues that his trial counsel was ineffective because she conceded defeat in an email to the prosecution before trial. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 4a will be denied.

### Ground 4b: Ineffective Assistance of Trial Counsel –
### Failure to Investigate Lying Witness

In Ground 4b, Petitioner argues that his trial counsel was ineffective because she failed to investigate allegations that a witness was lying  about whether the property was damaged prior to Petitioner's arrest. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 4b will be denied.

### Ground 4c: Ineffective Assistance of Appellate Counsel – Failure to Raise Meritorious
### Claims, Including the Claimed Error in Giving Instruction 310.02

In Ground 4c, Petitioner argues that his appellate counsel was ineffective for failing to raise meritorious claims, including the claimed error in giving instruction 310.02. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim, or any claims, of ineffective assistance of appellate counsel on appeal from the denial of his motion for post-conviction relief, and he has not shown cause to excuse the procedural default. To the extent that Petitioner contends his post-conviction counsel was ineffective, the Court notes that ineffective assistance of post-conviction counsel cannot excuse the procedural default of an ineffective assistance of appellate counsel claim. *See Davila*, 137 S. Ct. at 2064.

For all of the above reasons, Ground 4c will be denied.

### Ground 4d: Ineffective Assistance of Post-Conviction Counsel – Failure to Properly Argue the Claimed Error in Giving Instruction 310.02

In Ground 4d, Petitioner argues that his post-conviction counsel was ineffective in failing to properly argue, orally, or in briefing, the alleged errors related to the giving of instruction 310.02. A claim of ineffectiveness of post-conviction counsel in state proceedings is not cognizable in a habeas proceeding. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.") Thus, Ground 4d will be denied.

### Ground 4e: Ineffective Assistance of Trial Counsel – Failure to Object to Enhanced Sentence for Convictions Prior to 1995 and to Over-sentencing Under S.B. 491

In Ground 4e, Petitioner argues that his trial counsel was ineffective in failing to object to an enhanced sentence for convictions prior to 1995 and in failing to object to over-sentencing under S.B. 491. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 4e will be denied.

### Ground 5: Post-conviction Motion Court Error – Judge Filed Findings of Fact and Conclusions of Law Past Prescribed Deadline

In Ground Five, Petitioner alleges that Judge Philip Heagney (the motion court judge who ruled on his motion for post-conviction relief, *see* Resp't Ex. 11, at 141) filed his findings of fact and conclusion of law after the prescribed deadline set by the Missouri Supreme Court. Petitioner argues that this should have triggered sanctions and the granting of relief to Petitioner.

As Respondent argues, this claim alleges only an error of state law and is not cognizable in this habeas proceeding, and the Court agrees. Additionally, "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee*, 110 F.3d at 1351-52.

Petitioner asserts in his Reply that this claim (and several other claims alleging state law errors) involves a "due process violation" under the United States Constitution. *See* Reply, Doc. 20, at 2-3. As the Eighth Circuit has noted, however, "Repackaging the claim in due process wrapping does not transform a state law issue into a federal claim." *Cole v. Hopkins*, 56 F. App'x 742, 744 (8th Cir. 2003) (citing *Carson v. Dir. of the Iowa Dep't of Corr. Servs.,* 150 F.3d 973, 975 (8th Cir.1998)). *See also Dear v. Moore*, No. 4:07-CV-1261(CEJ), 2009 WL 330656, at *6 (E.D. Mo. Feb. 6, 2009) ("[A] petitioner may not transform a state-law issue into a federal one by merely asserting a violation of due process.") (citing *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996)). Petitioner has not set forth any facts or argument from which this Court could conclude that this state-law error rises to the level of a due process claim.

For all of the above reasons, Ground 5 will be denied.

### Ground 6: Missouri Court of Appeals Error – Allowing of Late-filed Brief

In Ground Six, Petitioner alleges that the Missouri Court of Appeals permitted the respondent to file its brief after the deadline it set. Petitioner argues that this brief should not have been accepted, and that the relief he sought should have been granted. This claim appears to be the same as Ground 2h and will be denied for the reasons stated above.

### Ground 7: Missouri Court of Appeals Error – Eyewitness Testimony Instructions

In Ground Seven, Petitioner alleges that "Appeals court judge, Kurt Odenwald, in an earlier opinion (St. v. Casey) wrote that MAI-CR 3102 could not be used when MAI-CR 302.01 is submitted because the latter's notes on use specifically states no other cautionary Rule (310.02) can be submitted with it or doing so would be error. This rule was written by the Mo. Supreme Court and my case should've been reversed yet appeals court clearly erred." This claim involves an alleged error by the Missouri Court of Appeals in interpreting Missouri law. Such a claim is not

cognizable in a federal habeas proceeding. *See Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions."); *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law."). Thus, Ground 7 will be denied.

### Ground 8: Prosecutorial Misconduct – Suborning Perjury

In Ground 8, Petitioner argues that the prosecutor suborned perjury of state's witness Robert Turner. This claim appears to be the same as Ground 1. For the reasons stated above with respect to Ground 1, this claim has been procedurally defaulted and must be denied.

### Ground 9: Violation of Article V of the Missouri Constitution

In Ground Nine, Petitioner argues that Article V of the Missouri Constitution prohibits the issuance of an information after an indictment the day of trial, as he alleges was done in his case, and that therefore his charges should have been dismissed. It appears that this claim has been procedurally defaulted due to Petitioner's failure to raise it in state court. Regardless, this claim alleges only an error of state law and is not cognizable in this habeas proceeding. Thus, Ground 9 will be denied.

### Ground 10: Trial Attorney Bias

In Ground 10, Petitioner argues that his trial counsel purposely undermined his case because of her racist attitude against black men and because of Petitioner's lack of skill in preparing for trial. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 10 will be denied.

### Ground 11: Eyewitness Perjury

In Ground 11, Petitioner alleges that witness Mark Bruner lied when he stated that he followed Petitioner for 20 minutes and lied when he said that he saw no damage at 4922 Penrose prior to August 1, 2014. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 11 will be denied.

### Ground 12: Bias of Trial Judge – Failure to Follow Sentencing Recommendation

In Ground 12, Petitioner alleges that the trial judge did not follow the sentencing recommendation in a pre-sentence investigation, because the judge had animus against him for proceeding to trial and based on a previous complaint he had filed against the judge. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 12 will be denied.

### Ground 13: Ineffective Assistance of Trial counsel – Improper Closing Argument

In Ground 13, Petitioner argues that his trial counsel was ineffective for admitting in closing argument that Petitioner was the person running from the police, which was inconsistent with his mistaken identity defense. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 13 will be denied.

### Ground 14: Ineffective Assistance of Trial counsel – Failure to Realize that State Witness was Perjuring Himself

In Ground 14, Petitioner alleges that his trial counsel was ineffective because she failed to glean from the data in discovery that witness Robert Turner committed perjury when he testified about a lack of damage to 4922 Penrose the day before the burglary. Petitioner also argues that his

trial counsel should have interviewed Turner's helpers, who would have told her that the damage had been done earlier. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 14 will be denied.

### Ground 15: Failure to Call Jennifer Sommer to Testify

In Ground 15, Petitioner alleges that the failure to call defense witness Jennifer Sommer to give testimony that would have undermined the testimony of Robert Turner was a miscarriage of justice. This appears to be a variation of the claim in Ground 17a (that the trial court erred in not continuing the trial so that Officer Sommer could testify) or Ground 17b (that trial counsel was ineffective for failing to properly request a continuance so that Officer Sommer could testify). To the extent that this is the same as those claims, it is denied for the reasons discussed elsewhere in this decision. To the extent that Petitioner is attempting to assert a different claim, Respondent argues that such a claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default.

For all of the above reasons, Ground 15 will be denied.

### Ground 16: Trial Court Error – Failure to Dismiss Case Based on Speedy Trial Violation

Ground 16 appears to be the same as Ground 2f. For the reasons stated above with respect to Ground 2f, Ground 16 will be denied.

### Ground 17b: Ineffective Assistance of Trial Counsel – Failure to Properly Request Continuance

In Ground 17b, Petitioner argues that his trial counsel was ineffective in failing to follow court rules when she requested a continuance so that witness Jennifer Sommer could testify at

trial.[14] This claim has been procedurally defaulted because Petitioner did not raise it on appeal from the denial of his motion for post-conviction relief, and Petitioner has not shown cause to excuse the procedural default.

In the alternative, Ground 17b is without merit. Even assuming, *arguendo*, that Petitioner could establish the first prong of the ineffective assistance of counsel test set forth in *Strickland* (that trial counsel's performance was deficient because she failed to follow a Missouri court rule in presenting the motion for continuance), he could not establish the second prong, prejudice (that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). As discussed above in the analysis of Ground 17a, the trial court did not deny the motion for continuance because of Petitioner's trial counsel's failure to follow Missouri court rules related to its presentation, but because the witness's testimony would have been repetitive and unnecessary, given that it would simply have restated facts that the prosecution's witness had already admitted to. Petitioner cannot establish a reasonable probablity that, if counsel had included Sommer's address or followed other procedural rules, the trial court would have granted the motion, nor can Petitioner establish a reasonable probability that, had the motion been granted and Sommer been allowed to testify, the outcome of the trial would have been different.

For all of the above reasons, Ground 17b will be denied.

---

[14] Petitioner does not state what court rules he is referring to. However, the Missouri Court of Appeals noted that the motion for a continuance lacked certain information required by Missouri Supreme Court Rule 24.10, including Sommer's address. Resp't Ex 8, at 10. The Court presumes that is the basis for this claim.

### *Ground 18: Trial Court Error – Failure to Dismiss Case Based on the Presence of Three Jurors*

In Ground 18, Petitioner argues that the trial court errored in not dismissing the case with prejudice because of the presence of three jurors: Hutti, Goodwin, and Williams. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default.

To the extent that Petitioner might argue that the procedural default of this claim should be excused because trial counsel was ineffective for moving to strike these jurors and preserve the issue for appeal, that argument would be without merit. With respect to jurors Hutti and Williams, that argument fails, because any claim of ineffective assistance related to those jurors has been procedurally defaulted. A claim of ineffective assistance of trial counsel cannot constitute cause to excuse a procedural default where (as here) the claim of ineffective assistance of trial counsel is itself procedurally defaulted, unless the petitioner shows cause and prejudice to excuse that procedural default. *See Edwards*, 529 U.S. at 452-53.

With respect to juror Goodwin, the argument fails because although Petitioner did properly raise an ineffective assistance claim of counsel based on failure to move to strike Goodwin, the Missouri Court of Appeals rejected that claim on the merits, and that decision is entitled to deference. *See* Resp't Ex. 16, at 12-14.[15]  Thus, Ground 18 will be denied.

---

[15] Petitioner argued in his postconviction proceedings that trial counsel was ineffective in failing to move to strike juror Goodwin, because juror Goodwin disclosed during voir dire that he had strong feelings against illegal scrapping. Resp't Ex. 12, at 52-63. The Missouri Court of Appeals denied that claim on the merits. Resp't Ex. 16, at 12-14. First, the court found that trial counsel was not ineffective for failing to move to strike Goodwin for cause, finding that when Goodwin's statements during voir dire were viewed as a whole—including his statements that the ministry he works with does legal scrapping and that his real problem was with people stealing shopping carts to use for illegal scrapping—there was at most a *possibility* that he was biased. *Id.* Second, the court found that trial counsel was not ineffective for not striking Goodwin peremptorily, relying on trial counsel's testimony that she thought Goodwin would be a sympathetic juror in light of his

***Ground 22: Trial Court Error – Sustaining of State's Motion in Limine***

In Ground 22, Petitioner argues that the trial court erred in sustaining the state's motion in

limine. Petitioner does not make any allegations regarding the nature of the motion in limine or

why he believes the state court erred. A review of the record shows that in the state's motion in

limine, the state requested the exclusion of (1) any exculpatory statements made by the defendant

to any witnesses, as such testimony would be self-serving and hearsay inadmissible under Missouri

law; (2) failure of the state to call all of its endorsed witnesses for trial, as any comment regarding

that matter would be prejudicial to the state, and (3) letters sent to the victim pertaining to building

inspections and occupancy of 4922 Penrose, as those records are inadmissible as hearsay and are

filled with references to building codes that would only confuse the jury; and (4) any information

about DNA or fingerprints in areas that were not searched for fingerprints. Resp't Ex. 2, at 20-22.

Respondent argues that this claim has been procedurally defaulted, and the Court agrees.

Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural

default.

Respondent also argues that Ground 22 does not raise a federal issue cognizable in this

habeas proceeding. Again, the Court agrees. "A state court's evidentiary ruling is a matter of state

law, and [federal courts] may examine the ruling in a habeas proceeding only to determine whether

the asserted error denied due process." *Bailey v. Lockhart*, 46 F.3d 49, 50 (8th Cir. 1995). "A state

court's evidentiary rulings can form the basis for habeas relief under the due process clause only

---

prior work with convicts and her experience suggesting that people who have worked with convicts
are more likely to be sympathetic to defendants. *Id.* at 13-14.

　　To the extent that Petitioner is attempting to raise this ineffective assistance of counsel
claim in the instant petition, the Court finds the claim to be without merit. A review of the state
court decision and the relevant portions of the trial transcript, including juror Goodwin's
statement's during voir dire, shows that the Missouri Court of Appeals applied *Strickland* to the
facts of his case in an objectively reasonable manner.

when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Osborne v. Purkett,* 411 F.3d 911, 917 (8th Cir. 2005) (quotation marks omitted). *See also Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) (finding that to warrant habeas relief based on an evidentiary ruling, the ruling must be "so egregious that [it] fatally infected the proceedings and rendered [the petitioner's] entire trial fundamentally unfair.") (quoting *Hamilton v. Nix*, 809 F.2d 463, 470 & n. 4 (8th Cir. 1987)). "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different." *Id.* (quoting *Hamilton*, 809 F.2d at 470).

Petitioner makes no attempt to explain how the trial court's ruling on any of the four issues in the State's motion in limine might have rendered his trial fundamentally unfair or how, absent the ruling(s), the verdict might have been different. Thus, Petitioner falls far short of carrying his burden of showing a due process violation, and the Court finds no federal claim in Ground 22 that is cognizable in this proceeding.

For all of the above reasons, Ground 22 will be denied.

### Ground 23: Trial Court Error – Failure to Reduce Sentence Pursuant to Mo. Rev. Stat. § 1.160

In Ground 23, Petitioner alleges that the trial court erred in not sustaining his motion to reduce his sentence pursuant to Mo. Rev. Stat. § 1.160. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Additionally, it appears that this claim raises only an error of state law that is not cognizable in this federal habeas proceeding.

For all of the above reasons, Ground 23 will be denied.

### *Ground 24: Trial Court Error – Not Granting Motion for New Trial*

In Ground 24, Petitioner alleges that the trial court erred in not granting his motion for a new trial. Petitioner raised nine claims in his motion for a new trial, Resp't Ex. 2, at 37-39, many of which are raised as grounds for relief elsewhere in the instant petition. Petitioner does not specify which of the issues raised, if any, he is asking the Court to review.

Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Court requires a petitioner to, among other things, "state the facts supporting each ground." The Eighth Circuit has held that to comply with Rule 2(c), a petitioner "must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990).

Here, Petitioner has not satisfied this standard, because he has not alleged any facts in support of this claim and has not even provided allegations sufficient for the Court to determine what claim Petitioner is asking it to review. Thus, Ground 24 will be denied.

### *Ground 25:  Ineffective Assistance of Trial Counsel –*
### *Failure to Inform Petitioner of Plea Offer*

In Ground 25, Petitioner alleges that his trial counsel failed to inform him that a plea offer was made by the prosecutor prior to trial, pursuant to which Petitioner could have pleaded guilty to a misdemeanor and received a sentence of six months. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 25 will be denied.

### Ground 26: Error by Post-Conviction Appeals Court

In Ground 26, Petitioner alleges that the Missouri Court of Appeals failed to grant him the relief he sought in the appeal from the denial of his motion for post-conviction relief, even though it had granted similar relief in the past. This claim alleges only an error by the post-conviction relief court, and "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee*, 110 F.3d at 1351-52. Thus, Ground 26 will be denied.

### Ground 27: Brady Violation

In Ground 27, Petitioner alleges that the prosecutor committed a violation of *Brady* v. *Maryland* by not revealing to the defense that the house at 4922 Penrose had been burglarized prior to Petitioner's arrest and the pipes removed days before his arrest. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 27 will be denied.

### Ground 28: Trial Court Error – Failure to Admit Building Division Records

In Ground 28, Petitioner alleges that the trial court erred by not allowing into evidence business records about the house at 4922 Penrose. He alleges that these records would have shown damage in the house prior to the burglary in this case. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 28 will be denied.

### Ground 29: Trial Court Error – Failure to Admit Fingerprint Analysis and Evidence Technician's Report

In Ground 29, Petitioner alleges that the trial court erred by not allowing fingerprint analysis and the evidence technician's report to be admitted at trial. Respondent argues that this

claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 29 will be denied.

### Ground 30: Ineffective Assistance of All Counsel – Heavy Case Load and Conflict of Interest

In Ground 30, Petitioner argues that his counsel at all levels was ineffective due to the (1) the heavy caseload of the public defender's office, and (2) the conflict of interest created by expecting attorneys to reveal mistakes by their coworkers.

Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Moreover, to the extent that Petitioner asserts ineffective assistance of post-conviction counsel, such a claim is not cognizable in a federal habeas proceeding. *See* 28 U.S.C. § 2254(i).

In the alternative, the Court finds this claim to be without merit. Claims of ineffective assistance of counsel are governed by the two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1994). Petitioner's general complaints about the public defender's office cannot support a finding that the *Strickland* standard has been satisfied.

For all of the above reasons, Ground 30 will be denied.

### Ground 31: Ineffective Assistance of Counsel – Failure to Call Witness

In Ground 31, Petitioner alleges that trial counsel failed to call subpoenaed witness, Nellie Kory Kendall, a city police officer, who would have provided exculpatory testimony and refuted testimony by all of the prosecution witnesses. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 31 will be denied.

***Ground 32: Excessive Sentence and Violation of Fair Sentencing Act and First Step Act***

In Ground 32, Petitioner alleges that his sentence was excessive compared to other cases, that the sentencing disparity was based on his race and economic status, and that his sentence violates the Fair Sentencing Act and First Step Act. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default.

Additionally, as Respondent notes, to the extent that Petitioner's argument is based on the the Fair Sentencing Act and First Step Act, it is without merit, because those are federal statues that do not apply to Petitioner's Missouri state sentence for burglary.

For all of the above reasons, Ground 32 will be denied.

***Ground 33: Trial Court Error – Failure to Follow Sentencing Advisory Guidelines***

In Ground 33, Petitioner alleges that the trial court erred by not following sentencing advisory guidelines. Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. This claim also appears to raise an error of state law that is not cognizable in this proceeding.

For all of the above reasons, Ground 33 will be denied.

***Ground 34: Error in Considering Petitioner's Prior Convictions in Sentencing***

In Ground 34, Petitioner alleges that his sentencing as a prior persistent offender was erroneous. Specifically, he alleges that his 1995 conviction should not have been counted, and that therefore he should be subject to serving only 50% of his 12-year sentence and not 80% of his 12-year sentence.

Respondent argues that to the extent that this claim challenges his sentencing by the trial court, this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default.

Respondent also argues that to the extent that this claim is an attempt to challenge the calculation of his parole eligibility, it is unexhausted and may be raised in a declaratory judgment action in state court. *See, e.g.*, *Mozee v. Missouri Board of Probation,* 401 S.W.3d 500 (Mo. Ct. App. 2013) (considering prisoner's petition seeking declaratory relief regarding the percentage of a sentence he was required to serve before becoming eligible for parole). Petitioner provides no response to this argument in his reply, and the Court agrees with Respondent that if this claim is being asserted, it is unexhausted and cannot be considered by this Court.

For all of the above reasons, Ground 34 will be denied.

### *Ground 35: All Points Previously Raised*

In Ground 35, Petitioner asserts "[a]ll points raise in motion for new trial, direct appeal, pro se pretrial motions. 29.15 (PCR) motion, 29.15 (PCR) appeal, defense pretrial motions and motion to reduce sentence." As discussed above, the Eighth Circuit has held that to comply with Rule 2(c) of the Rules Governing Habeas Corpus Cases Under Section 2254, a petitioner "must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Adams*, 897 F.2d at 334. A petitioner's "general reference to the transcripts, case records, and briefs on appeal patently fails to comply with Rule 2(c)," and the district court is not required to "sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief." *Id*. at 333.

Here, as with Ground 24, Petitioner has not alleged any facts in support of this claim, and indeed has not even provided allegations sufficient for the Court to identify any claim to review. Thus, Ground 35 will be denied.

### Ground 36: Jurors Saw Petitioner in Shackles

In Ground 36, Petitioner alleges that two of the three black jurors saw him in shackles, exiting the courthouse. He alleges that this information was shared with other jurors and resulted in prejudice against Petitioner.

Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 36 will be denied.

### Ground 37: Deputy Sheriff's Presence During Jury Deliberations and Violation of Missouri Supreme Court Rules

In Ground 37, Petitioner alleges that a deputy sheriff was present during the jurors' deliberations, was involved with discussions, and was aware of the verdict before it was unsealed by the clerk. Petitioner also alleges that before the verdict was read, the sheriff summoned additional deputies to escort Petitioner to jail from the courtroom in shackles, contrary to Missouri Supreme Court rules.

Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Moreover, to the extent that Petitioner alleges a violation of Missouri Supreme Court rules, the claim involves only an error of state law that is not cognizable in this proceeding.

For all of the above reasons, Ground 37 will be denied.

### *Ground 38: Perjury by Prosecution Witness Owen Hill*

In Ground 38, Petitioner alleges that Officer Owen Hill, a witness for the prosecution, falsely testified that he had positively identified Petitioner on Kingshighway, when in fact he never saw Petitioner. Petitioner also alleges that the prosecutor failed to reveal Hill's record of lying and elicited responses from Hill that the prosecutor knew were false.

Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 38 will be denied.

### *Ground 39: Outside Influence of Trial Judge*

In Ground 39, Petitioner alleges that the trial judge allowed outside sources, such as attorney Jane King, to influence his decisions throughout the proceedings.

Respondent argues that this claim has been procedurally defaulted, and the Court agrees. Petitioner did not raise this claim in state court and has not shown cause to excuse the procedural default. Thus, Ground 39 will be denied.

### C.  Request for Appointment of Counsel and Evidentiary Hearing

Finally, the Court addresses Petitioner's request for an evidentiary hearing and request for appointment of counsel, both of which are made in his petition.

#### 1.   Evidentiary Hearing

The circumstances under which the Court may grant a request for an evidentiary hearing in a habeas case are limited. As to the claims that were adjudicated on the merits in state court, this Court's review of each claim is limited to the record that was before the state court. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("[R]eview under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); 28 U.S.C.

§ 2254(d)(2) (providing that a claim shall not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*") (emphasis added). Additionally, under § 2254(e)(2), where a petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless the petitioner shows, *inter alia*, that the claim relies on either "a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." The Eighth Circuit has also held that an evidentiary hearing is not warranted simply because a petitioner makes allegations that evidence exists that would prove him to be innocent. *See Weeks*, 119 F.3d at 1353-55. Moreover, even if an evidentiary hearing is permitted, the Court may deny an evidentiary hearing "if such a hearing would not assist in the resolution of [the Petitioner's] claim." *Johnston v. Luebbers*, 288 F.3d 1048, 1059 (8th Cir. 2002) (quotation marks omitted).

Here, Petitioner does not explain what specific evidence he wants to develop in an evidentiary hearing, nor does he show that any evidence he developed would assist in the resolution of any of his claims. He has also not made any attempt to show either that § 2254(e)(2) does not apply to him or that the requirements of § 2254(e)(2) are satisfied.

For all of the above reasons, the Court will deny Petitioner's request for an evidentiary hearing.

### 2.   *Appointment of Counsel*

Under Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts, "If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A." However, "[i]f no evidentiary hearing is necessary, the appointment of counsel is discretionary." *Abdullah v. Norris*,

18 F.3d 571, 573 (8th Cir. 1994). In deciding whether to appoint counsel, the court should "determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the petitioner and the court to such an extent that 'the interests of justice so require'" it. *Id.* (quoting 18 U.S.C.A. § 3006A(a)(2)). The court considers "the legal complexity of the case, the factual complexity of the case, the petitioner's ability to investigate and present his claim, and any other relevant factors." *Id.*

After considering all of the above standards in conjunction with the claims raised by Petitioner in his petition, the Court finds that the appointment of counsel would not benefit Petitioner and the Court to such an extent that the interests of justice require the appointment of counsel. Thus, the request for appointment of counsel will be denied.

## IV.   CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted).

The Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED THAT** Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue, because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.


_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2022.